<u>No. 22-10646-CC</u>

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

—————————————

## DYLAN CAMPBELL,

## Plaintiff-Appellant,

## v.

## UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD,
## d/b/a VOLCANO BAY

## Defendant-Appellee.

—————————————

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

—————————————

## APPELLANT'S INITIAL BRIEF

—————————————

Matthew W. Dietz, Esq.
Disability Independence Group, Inc.
2990 Southwest 35th Ave.
Miami, Florida 33133
Telephone: (305) 669-2822
Facsimile: (305) 442-4181
E-mail: Mdietz@justdigit.org
        aa@justdigit.org

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

## <u>Certificate of Interested Persons</u>

Appellant, Dylan Campbell, pursuant to 11th Cir. Rule 26.1-1, hereby
provides the following list of each person, attorney, association of persons, firm, law
firm, partnership and corporation that has or may have an interest in the outcome of
this action, including subsidiaries, conglomerates, affiliates, parent corporations,
publicly traded companies that own 10% or more of a party's stock, and all other
identifiable legal entities related to any party:

1.    Beaudine, Michael J. – Counsel for Appellee

2.    Byron, Paul G. – United States District Judge

3.    Campbell, Dylan – Appellant

4.    Comcast Corporation (ticker: CMCSA)

5.    Dietz, Matthew W. – Counsel for Appellant

6.    Disability Independence Group, Inc. – Counsel for Appellant

7.    Hoffman, Leslie R. – United States Magistrate Judge

8.    Latham, Luna, Eden & Beaudine, LLP – Counsel for Appellee

9.    NBCUniversal Media, LLC

10.   Ogletree, Deakins, Nash, Smoak & Stewart, P.C.- *Pro Hac Vice* for
      Appellee

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

11.    ProSlide Technology LLC.- non-party manufacturer of rides at Appellee's public accommodation

12.    Raizman, David – *Pro Hac Vice* for Appellee

13.    Tasch, Stephen J., Esq.- Counsel for ProSlide Technology, LLC

14.    Taylor, Christina – Counsel for Appellee

15.    Universal City Development Partners, Ltd., d/b/a Volcano Bay – Appellee

16.    Universal City Florida Holding Co. I

17.    Universal City Florida Holding Co. II

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

## <u>Statement Regarding Oral Argument</u>

Pursuant to Rule 34, Fed. R. App. P., and 11th Cir. R. 34-4, Appellant respectfully requests that this appeal be placed on the oral argument calendar for submission and decision with oral argument. Appellant also respectfully requests the argument be heard in Miami, Florida.

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

## **Table of Contents**

Certificate of Interested Persons ............................................................. ii

Statement Regarding Oral Argument ..................................................... iv

Table of Contents ................................................................................... v

Table of Authorities ............................................................................. vi

Statement of Jurisdiction ........................................................................ 1

Statement of the Issues ........................................................................... 1

Statement of the Facts ............................................................................ 2

Statement of the Case ............................................................................ 12

Summary of the Argument ..................................................................... 15

Standard of Review ................................................................................ 18

**ARGUMENT** ....................................................................................... 18

   I.   **UNDER THE AMERICANS WITH DISABILITIES ACT, A PUBLIC ACCOMMODATION IS NOT PERMITTED TO APPLY ELIGIBILITY CRITERIA TO GUESTS IN A MANNER THAT WOULD SCREEN OUT INDIVIDUALS WITH DISABILITIES, UNLESS THE CRITERIA ARE NECESSARY FOR THE PROVISION OF THE ACCOMMODATIONS PROVIDED.** ....................................... 18

   II.  **IN ALL CIRCUMSTANCES, FEDERALISM AND THE SUPREMACY CLAUSE MANDATE THAT CONFLICTING STATE LAWS AND ORDINANCES MUST CEDE TO THE REQUIREMENTS OF THE AMERICANS WITH DISABILITIES ACT.** ........................................... 28

Conclusion .............................................................................................. 34

Certificate of Compliance ..................................................................... 35

Certificate of Service ............................................................................. 36

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

## Table of Authorities

**Cases**

Anderson v. Little League Baseball, Inc., 794 F. Supp. 342 (D. Ariz. 1992) .........22

Armstrong v. Exceptional Child Center, Inc., 575 U.S. 320, (2015) ......................30

Astralis Condo. Ass'n v. HUD, 620 F.3d 62, 69-70 (1st Cir. 2010) .......................32

Barber v. Colorado Dep't of Revenue, 562 F.3d 1222 (10th Cir. 2009)................33

Bauer v. Muscular Dystrophy Ass'n, 427 F.3d 1326 (10th Cir. 2005) ...................21

Bench v. Six Flags Over Texas, Inc., 2014 WL 12586743

 (N.D. Tex  2014) ...................................................................................... 18, 27, 29

Blind Indus. & Services of Maryland v. Route 40 Paintball Park, 2012 WL

 6087489 (D. Md. 2012)...........................................................................23

Castelan v. Universal Studios, Inc., 2014 WL 210754.

 (C.D. Cal. 2014) ....................................................................................... 18, 26, 27

Celotex Corp v. Catrett, 477 U.S. 317 (1986) .........................................................19

Chevron U.S.A., Inc. v. Echazabal, 536 U.S. 73, 86 (2002) ...................................26

Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363 (2000) ................................31

Crowder v. Kitagawa, 81 F.3d 1480 (9th Cir. 1996)............................ 32, 33, 34, 35

Doe v. Deer Mountain Day Camp, Inc., 682 F. Supp. 2d 324 (S.D.N.Y. 2010).....21

Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141 (1982).................31

Gil v. Winn-Dixie Stores, Inc., 993 F.3d 126 (11th Cir. 2021)...............................20

Hillsborough County v. Automated Med. Labs, Inc., 471 U.S. 707 (1985) ...........31

Jones v. City of Monroe, MI, 341 F.3d 474 (6th Cir.2003) ....................................32

Jones v. Rath Packing Co., 430 U.S. 519 (1977)....................................................31

Larsen v. Carnival Corp., Inc., 242 F. Supp. 2d 1333, (S.D. Fla. 2003) ................23

Leiken v. Squaw Valley Ski Corp., CIV. S-93-1622 LKK,

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

1994 WL 494298 (E.D. Cal. June 28, 1994) .......................................................22

Lewis v. Brunswick Corp., 107 F.3d 1494 (11th Cir.1997) ..................................30

Masci v. Six Flags Theme Park, Inc., 2014 WL 7409952 (D. N.J. 2014)........ 18, 28

Matheis v. CSL Plasma, Inc., 936 F.3d 171 (3d Cir. 2019) ............................ 22, 25

Nat'l Fed'n of the Blind v. Lamone, 813 F.3d 494 (4th Cir. 2016).........................32

North Carolina State Bd. of Educ. v. Swann, 402 U.S. 43 (1971). ........................33

Rendon v. Valleycrest Productions, Ltd., 294 F.3d 1279 (11th Cir. 2002).............20

Ring v. Boca Ciega Yacht Club Inc., 4 F.4th 1149 (11th Cir. 2021) .....................20

Rizzo v. Children's World Learning Ctrs., Inc., 84 F.3d 758 (5th Cir. 1996) ........18

Sak v. City of Aurelia, Iowa, 832 F. Supp. 2d 1026 (N.D. Iowa 2011) ..................34

Sch. Bd. of Nassau Cnty., Fla. v. Arline, 480 U.S. 273 (1987)...............................16

Schutza v. CarMax Auto Superstores California, LLC, 2018 WL 4562771 (S.D.

Cal. 2018)..........................................................................................................22

Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co., 508 F.3d 1337 (11th Cir. 2007).........19

Theriault v. Flynn, 162 F.3d 46 (1st Cir. 1998)......................................................21

United States v. Asare, 2018 WL 2465378 (S.D.N.Y. 2018).......................... 21, 22

Wis. Pub. Intervenor v. Mortier, 501 U.S. 597 (1991) ..........................................30

**Statutes**

§ 616.242, Fla.Stat. ...................................................................................................1

§ 760.08, Fla. Stat. ..................................................................................................12

§ 760.11, Fla. Stat. ..................................................................................................12

42 U.S.C. § 12102....................................................................................................20

42 U.S.C. § 12182(b)(1)(A)(i) ................................................................................20

42 U.S.C. § 12182(b)(2)(A)(ii) ...............................................................................16

Americans with Disabilities Act, 42 U.S.C. § 12182 ..................................... passim

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

Supremacy Clause, U.S. Const. Art. VI, cl. 2........................................ 19, 27, 30, 33


**Other Authorities**

136 Cong. Rec. E1913-01, 1990 WL 80290 (May 22, 1990) .......................... 17, 29

56 Fed.Reg. 35 (July 26, 1991)................................................................................21

William L. Moorer, Who Decides Who Rides: Examining Amusement Ride
  Access Policies and Title III, 88 Miss. L.J. 411, 425 (2019)................................24

**Regulations**

28 C.F.R. § 36.208 ...............................................................................................25

28 C.F.R. § 36.301 ............................................................................... 17, 20, 27, 28

28 C.F.R. § Pt. 36, App. C, p.960 (7-1-21).............................................................23

28 C.F.R. 36.301(b) ...............................................................................................21

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

## **Statement of Jurisdiction**

This Court has jurisdiction over this appeal from the final judgment of the District Court entered on February 8, 2022 (Doc. 67), and from the Order Denying Plaintiff's Motion for Summary Judgment and Granting Defendant's Motion for Summary Judgment entered on February 7, 2022 (Doc. 66). Appellant timely filed a Notice of Appeal with the District Court on February 25, 2022 (Doc. 69).

## **Statement of the Issues**

1.     Whether § 616.242(4), Fla. Stat. and § 5J-18.0011(1) F.A.C. is preempted in this case by the Americans with Disabilities Act's mandate that eligibility criteria may not discriminate on the basis of disability.

2.     Whether there was any material issue of fact in dispute regarding Appellee's affirmative defense that the eligibility criteria were necessary for the provision of the accommodations being offered.

3.     Whether Title III of the Americans with Disabilities Act permits deference to any state or local law, regulation, or industry standard without an evaluation of whether such requirement was based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities.

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

**<u>Statement of the Facts</u>**

**A. Dylan Campbell**

Appellant Dylan Campbell ("Campbell") is a man who was born without a right forearm and hand and does not use a prosthetic arm (Doc 28 – Pg 1). Because he has only one arm and hand, he is a qualified person with a disability (Doc 28 – Pg 1). Even with this disability, Campbell works, participates in multiple community activities, and does everyday tasks without the need for an accommodation or auxiliary aids (Doc 28 – Pg 9).

**B. Events of May 10, 2019.**

On May 10, 2019, Campbell and his family went to Volcano Bay, a water amusement park, owned and operated by Appellant Universal City Development Partners, Ltd in Orlando, Florida (hereinafter "Volcano Bay") (Doc 28 – Pg 1, 2). Campbell was able to enjoy one waterslide attraction before being told by the ride operator he was unable to ride the "Krakatau" attraction because he could not hold handles, provided to riders, that require two hands (Doc 28 – Pg 2). Shortly after, Campbell was told by a manager that he could not go on any of the rides at Volcano Bay because he did not have an arm up to the elbow (Doc 28 – Pg 10). A second manager told Campbell he could not ride raft-style rides at Volcano Bay (Doc 28 – Pg 10). Even though the "Krakatau" signage for potential riders indicated that persons with heart conditions, with previously existing neck/back conditions, or who

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

were pregnant, could not safely ride it, the signage did not indicate that people with

limb differences could not safely ride (Doc 28-1 – Pg 16).

### C. Volcano Bay and its safety requirements on May 10, 2019.

Volcano Bay opened its facility to the public in May 2017 (Doc 28 – Pg 1, 2).

Volcano Bay contracted with ProSlide Technology, Inc. ("ProSlide"), a Canadian

corporation, to design and manufacture almost all the rides at Volcano Bay (Doc 28

– Pg 2). Volcano Bay has four types of water ride attractions: raft-style rides/aqua

coasters, waterslides without a vehicle, waterslides with a multiuser vehicle, and

waterslides with a single-user vehicle (Doc 28 – Pg 3).

Prior to constructing the rides, ProSlide engaged in several detailed risk

analyses, both internal and external (Doc 28 – Pg 3, 7). ProSlide conducted its

standard internal risk assessments and hazard analyses, then hired Rams Consultants,

Inc. ("Rams") to do a more detailed analysis of the risks (Doc 28 – Pg 3, 7). A risk

assessment and hazard analysis involve taking an in-depth look at the ride or ride

system and describe all reasonably expected risks contemplated for the ride, but

exclude outlandish examples that are extremely unlikely, like a meteor hitting the

ride (Doc 28 – Pg 7). The analysis assesses both the likelihood and severity of a

particular risk (such as a rider falling out of a raft-style ride) and different ways to

mitigate any risk (Doc 28 – Pg 7).  ProSlide's charts of severity and likelihood were:

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

| HAZARD SEVERITY CLASSIFICATION | | |
|---|---|---|
| **CATEGORY** | **DESCRIPTION** | **CONSEQUENCES FOR PEOPLE OR ENVIRONMENT** |
| I | CATASTROPHIC | Single or multiple rider or support staff fatalities or total ProSlide 1505 system loss or severe environmental damage |
| II | CRITICAL | Severe unrecoverable rider or support staff injury, major system or environmental damage, (fracture of leg/arm etc. loss of sight electric shock) |
| III | MAJOR | Rider or support staff recoverable injury, or injury requiring medical treatment only, (cuts, bruises, whip lash, irritations, sprains), minor system or environmental damage. |
| IV | MARGINAL | Riders or support staff may experience some discomfort but do not sustain any injury |
| V | INSIGNIFICANT | No Impact – Ride stops in safe state |

(Doc 44-1, Pg 95) (Table 1 – Hazard Severity Classification)

| FAILURE MODE LIKELIHOOD OCCURRENCE | | |
|---|---|---|
| **Description** | **Level** | **Definition** |
| FREQUENT | A | Likely to occur frequently in the life of the ProSlide 1505, with a frequency of occurrence less than 10-s per operating hour (more than 1 in 600 dispatches). |
| PROBABLE | B | Will occur several times in the life of the ProSlide 1505, with a frequency of occurrence greater than 10-s per operating hour (fewer than 1 in 6,000 dispatches) |
| OCCASIONAL | C | Likely to occur several times in the life of the ProSlide 1505, with a frequency of occurrence greater than 106- per operating hour (fewer than 1 in 60,000 dispatches). |
| REMOTE | D | Likely to occur at sometime during the life of the ProSlide 1505, with a frequency of occurrence greater |

Page 4

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

| | | |
|---|---|---|
| | | than 10-7 per operating hour (fewer than 1 in 600,000 dispatches). |
| IMPROBABLE | E | Unlikely to occur but is considered possible, with a frequency of occurrence greater than 10-s per operating hour (fewer than 1 in 6,000,000 dispatches). |
| INCREDIBLE | F | So unlikely it can be assumed occurrence will never be experienced in the life of the attraction, with a frequency of occurrence greater than 109- per operating hour (fewer than 1 in 60,000,000 dispatches). |
| UNATTAINABLE | G | There is less than a 50% probability of the failure occurring more than once in 10 attraction lifetimes (200 years) |

(Doc 44-1, Pg 95) (Table 2 – Hazard Likelihood of Occurrence)

| RISK ASSESSMENT | | | | | |
|---|---|---|---|---|---|
| Frequency of Occurrence | I Catastrophic | II Critical | III Major | IV Marginal | V Negligible |
| (A) Frequent | IA | IIA | IIIA | IVA | VA |
| (B) Probable | IB | IIB | IIIB | IVB | VB |
| (C) Occasional | IC | IIC | IIIC | IVC | VC |
| (D) Remote | ID | IID | IIID | IVD | VD |
| (E) Improbable | IE | IIE | IIIE | IVE | VE |
| (F) Incredible | IF | IIF | IIIF | IVF | VF |
| (G) Unattainable | IG | IIG | IIIG | IVG | VG |

(Doc 44-1, pg 96) (Table 3- Risk Assessment)

| HAZARD RISK INDEX ASSESSMENT CRITERIA | |
|---|---|
| IA, 1B, IC, IIA, 11B, IIIA, | *Unacceptable Risk* - Intolerable risk and must be reduced and controlled by design. |
| ID, IE, IF, IIC, IID, IIE, IIF, 111B, IIIC, IVA | *Undesirable Risk* - requires management review and decision and must be reduced. |
| IG, IIID, IIIE, IVB, IVC, IVD, VA, VB, VC | *Tolerable Risk* - Risk requires engineering review and approval and should be reduced if possible. |

Page 5

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

| IIG, IIIF, IIIG, IVE, IVF, IVG, VD, VE, VF, VG | **_Acceptable Risk_** - risk i s acceptable without review. |
|---|---|

(Doc 44-1, Pg 97)(Table 4 – Hazard Risk Index)

Aside from one risk that involves a hazard for a visually impaired patron (something not relevant to Campbell), the risk assessments and hazard analyses performed by ProSlide and Rams identified no risks for anyone with a limb difference or any other physical disability (Doc 28 – Pg 9).

From the risk analyses performed, ProSlide developed "Operations Manuals" for its rides containing suggested operating guidelines (hereinafter "suggested guidelines") regarding riders (Doc 28-2 – 28-11). The suggested guidelines for "Krakatau" state "each rider should have the physical abilities to support themselves in the designated riding position during the course of the ride and landing area," and riders should "firmly grasp the handles" throughout the ride (Doc 28 – Pg 3). Suggested guidelines for other rides at Volcano Bay similarly require riders to be able to maintain the proper riding position (Doc 28 – Pg 3,4). For the ride attractions with vehicles, riders must "firmly grasp the handles" provided in the vehicle (Doc 28 – Pg 4).

While ProSlide's internal and Rams' external hazard analyses and risk assessments identified certain risks for people not maintaining the proper ride position throughout the ride (such as whiplash and sprains if the conveyor belt

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

suddenly stops or if the vehicle enters the ride while a guest is not attentive (Doc 44-1 – Pg 85), **none** specifically assessed the ability (or inability) of a person with a disability to maintain the proper ride position throughout the ride, nor did they assess any risks associated with not holding on with both hands (Doc 28 – Pg 9).

From the Operations Manual, Volcano Bay developed a park brochure entitled, "Guide for Rider Safety and Accessibility", that contains rider eligibility criteria (hereinafter "rider requirements") (Doc 28-1 – Pg 1-20).

On December 13, 2016, several months before opening the park, Volcano Bay proposed its rider requirements for persons with limb differences in its own document internally referenced to as "rider eligibility chart" (hereinafter "limb matrix") during its negotiations with ProSlide as to what rider requirements should be applied to rides at Volcano Bay (Doc 28-13 – Pg 1). Volcano Bay's proposed rider requirements and limb matrix would have permitted Campbell, and others with only one natural arm, to ride all the rides at Volcano Bay (Doc 28-12 and Doc 28-13 – Pg 2). On March 6, 2017, ProSlide rejected Volcano Bay's proposed rider requirements and limb matrix, and began arbitrarily eliminating rides for patrons, including Campbell, to enjoy (Doc 28-13 – Pg 3, 6 and Doc 30 – Pg 6). On April 5, 2017, ProSlide expressed their speculation as to potential risk to Volcano Bay:

> "Here is the latest based on ProSlide's last review. Please be advised as well ProSlide has decided to maintain their position

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

on the original Limb Chart markup after further Executive
consultation internally. We will need to discuss this at this
meeting as well. We feel that at this time we are not prepared to
take on these risks but will work to change the restrictions over
time." (Doc 28-13 – Pg 7)

In a memorandum to Volcano Bay on April 8, 2017, ProSlide erroneously

stated that the Americans with Disabilities Act does not include waterslides because

there are no specific requirements, but again, ProSlide was speculating on the side

of safety to ensure that persons with limb differences were extra safe, but were

willing to examine these restrictions over time:

> 4. **There are no requirements under the ADA Standards
> Requirements for waterslides…. in fact there is a specific
> exclusion:** Universal wants to be a leader in offering more
> entertainment opportunities to those with disabilities.
>
> ProSlide wants to help Universal do this over time and it will
> take time. It is important to note that at this time, there are no
> requirements under the ADA Standards section for waterslides
> (Industry wide)…. in fact there is a specific exclusion under
> Section 230.11. The biggest reason is safety and making sure
> that we are not putting anyone in harm's way irresponsibly;
> …
> 6. ***Over time ProSlide is very open to further discussion with
> Universal about reviewing these recommendations: The
> ProSlide Team is very sensitive to Universal's desire to be a
> leader in offering water entertainment attractions to all people.
> For this reason, we are very open to review and further
> discussion concerning these recommendations based on our
> mutual experience with the operating rides and delivering
> ongoing safe operating procedures.

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

> We will be working closely together on as a timely basis as
> possible to further this ADA initiative. Nobody cares more
> about this as our two companies.

(Doc 28-13 – Pg 23, 24). Then, in late April 2017, just before Volcano Bay opened,

ProSlide again rejected Volcano Bay's latest proposed rider requirements and limb

matrix which still would have permitted Campbell to ride all the rides at Volcano

Bay, and instead proposed and approved ProSlide's suggested guidelines that

prohibited Campbell from riding **any** of the rides at Volcano Bay (Doc 28 – Pg 5).

Andreas Tanzer ("Tanzer"), Rick Hunter, and Greg White were among the

employees from ProSlide who developed the proffered guidelines (Doc 28 – Pg 7).

None have any specific background or experience in disabilities or limb differences

or in specifically developing standards or evaluating risks for persons with

disabilities or limb differences (Doc 28 – Pg 7). ProSlide's evaluations of risks for

riders without certain limbs such as Campbell, and overall suggested guidelines are

derived from internal tests, "ride verifications", observations by customers and ride

operators, and general experience with different amusement parks, not from

experience with disabilities or limb differences (Doc 28 – Pg 7). ProSlide had no

documentation of testing, ride verifications or any other tangible evidence of safety

risks to a person with limb differences or any other disability and did not maintain

any documentation exists regarding internal conversations having to do with limb

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

differences in water rides except for those with Volcano Bay in 2016 and 2017 (Doc

28 – Pg 7-8 and Doc 28-13). Without actual verified risks, without consultation from

any medical professionals or medical experts, without any background or experience

in limb differences, prosthetics, and physiology, ProSlide generated suggested

guidelines that ultimately dictated Volcano Bay's rider requirements and limb matrix

(Doc 30-1 – Pg 3, 7-8 and Doc 28-14)).

Volcano Bay maintained the standards required by Pro Slide because it asserts

that § 616.242(4), Fla. Stat. requires amusement park owners/operators, to follow

regulations propounded by the Florida Department of Agriculture, 5J-18.0011(1)

F.A.C., which in turn, requires ride operators to follow manufacturer's guidelines

(Doc 28 – Pg 6). See F770-18 §§5.1 ("5.1 *Operating Document*—The

owner/operator shall prepare an Operating Document for each amusement ride or

device based on the recommended instructions and specifications provided by the

manufacturer.") (Doc 30-1 – Pg 98-101).

While ProSlide maintained that its suggested guidelines align with "industry

accepted riding parameters" (Doc 28 – Pg 9), Volcano Bay's expert, Brian King,

P.E., confirmed that ASTM Standard F770-18, which provides industry consensus

guidance for the owners of amusement rides, does not contain any specific

requirements for water rides (Doc 30-1 – Pg 98-101). However, the current standard

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

allows manufacturers to create arbitrary, capricious, or absurd standards. Brian King

testified as follows:

> BY MR. DIETZ:
> Q      Okay. When – when according to Rule 6.1 and Section 6.1.2.6
> would this include any rule that the manufacturer deems to be
> necessary?
> [. . .]
> THE WITNESS: I am not sure I understand the question.
> BY MR. DIETZ:
> Q If the manufacturer said that in order to be on this ride everybody
> must be quiet. You cannot scream. That's the manufacturer's
> recommendation. Would it be applicable to this rule if the manufacturer
> recommended that?
> A      Yes.
> Q      Okay. If the manufacturer said in order to be on this ride you - -
> you have to have a certain BMI. If you don't have the certain BMI
> would that be a manufacturer's recommendation that would pertain to
> this rule?
> [. . .]
> A      Yes.
> Q      [. . .] And if - - if on this water ride if they said women cannot go
> on this ride because they are more buoyant than men would that be a
> manufacturer recommendation?
> A      [. . .] The answer is yes.
> Q      And [. . .] would there *(sic)* recommendation be included as
> recommended passengers restrictions under 6.1.2.6?
> A      Yes.
> Q      [. . .] what if their recommendation were entirely arbitrary? Such
> as if - - if a person had blond hair, they would not be able to go on. We
> do not recommend that they go on the ride. Would that be a
> recommended operating or maintenance instruction which would be
> recommended passenger restriction?
> A      Yes. As ridiculous as it sounds.

(Doc 37-1 – Pg 17-19).

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

## Statement of the Case

On November 18, 2019, Campbell timely filed a Public Accommodations Complaint of Discrimination with the Florida Commission on Human Relations ("FCHR"), pursuant to the Florida Civil Rights Act, § 760.08, Fla. Stat., alleging discrimination by a public accommodation, Volcano Bay, based upon disability (Doc 1 – Pg 5). Since FCHR failed to determine whether there was reasonable cause within the statutory 180-day period, Campbell complied with statutory preconditions under § 760.11, Fla. Stat.

On May 18, 2020, Campbell filed a complaint against Volcano Bay in the U.S. District Court for the Middle District of Florida, Orlando Division (Doc 1). The complaint contained two counts, the first was for violation of the Florida Civil Rights Act of 1992, §760.08 for damages and injunctive relief for excluding Campbell from Defendant's public accommodation, pursuant to Florida law (Doc. 1 – Pg 7, 8). The second count was for violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 ("ADA") when Volcano Bay imposed unlawful eligibility criteria against persons with disabilities (Doc 1 – Pg 8, 9). Volcano Bay answered the complaint (Doc 12).

On October 21, 2021, Campbell filed his Motion for Summary Judgment (Doc 29), and Volcano Bay filed its Motion for Summary Judgment (Doc 30). Most of the facts were not in dispute and the parties filed an agreed statement of facts in

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

order to determine whether Volcano Bay had an obligation to follow Florida law, which eventually deferred to the manufacturer's requirements (Doc 28).

On February 7, 2022, the District Court entered its Final Order granting Defendant's Motion for Summary Judgment (Doc 66). The District Court found that the operator of an amusement park must defer to Florida regulations without question or evaluation due to the historic police powers of the state of Florida. Specifically, the District Court made the following findings as a matter of law:

(1)    "The ADA does not preempt Florida law and its accompanying regulations" in determining what is "necessary for the safe operation of amusement rides" and how to best fulfill "Congress' purpose of eliminating disability discrimination in places of public accommodation." (Doc 66 – Pg 8).

(2)    ProSlide's suggested guidelines were necessary for the safe operation of rides, without any analysis of whether evidence on the record showed they made the rides at Volcano Bay safer or not safer to operate, or whether there was any risk or no risk to riders with limb differences (Doc 66 – Pg 6, 7).

(3)    Congress did not intend to oust the Florida Legislature in the field of regulating patron health and safety in the amusement park setting and expressly anticipated the need for exempted necessary eligibility criteria, without discussing whether ProSlide's suggested guidelines fit this exempted status (Doc 66 – Pg 8).

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

(4)    Florida regulations fit within the federal statutory scheme and were not an obstacle to the ADA's purpose of eliminating disability discrimination in places of public accommodation, without analysis supporting this finding (Doc 66 – Pg 8).

(5)    The District Court cited the state's historic police powers to institute a "floor" of neutral ridership eligibility criteria that the Florida Legislature deems necessary for the safe operation of amusement rides, without discussing how upholding the Florida legislation did not violate the ADA (Doc 66 – Pg 8).

(6)    The Florida Legislature's adoption of ASTM standards was reasonable because ASTM should be responsible for ridership eligibility criteria, and ASTM's determination that manufacturers should evaluate ridership eligibility criteria was also reasonable and sufficient to determine the suggested guidelines necessary for the safe operation of Volcano Bay's rides, without any analysis in support of this finding (Doc 66 – Pg 9).

(7)    The ADA does not require a reevaluation of ProSlide's suggested guidelines to see if they are truly necessary for the safe operation of Volcano Bay's rides, without analysis of whether evidence on the record supported this finding (Doc 66 – Pg 9).

On February 25, 2022, Campbell timely filed his Notice of Appeal with the District Court (Doc 69).

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

## Summary of the Argument

In enacting the Americans with Disabilities Act, Congress intended to codify

the U.S. Supreme Court decision in <u>Sch. Bd. of Nassau Cnty., Fla. v. Arline</u>, 480

U.S. 273, 287,107 S.Ct. 1123, 1130-1131, 94 L.Ed. 307 (1987), where the court

stated that Section 504 of the Rehabilitation act commands an inquiry if this law is

to achieve its goal of protecting handicapped individuals from deprivations based on

prejudice, stereotypes, or unfounded fear, while giving appropriate weight to such

legitimate concerns of grantees as avoiding exposing others to significant health and

safety risks. This requirement resulted in "discrimination" being defined, in part, as

follows:

> i)      the imposition or application of eligibility criteria that screen out
> or tend to screen out an individual with a disability or any class of
> individuals with disabilities from fully and equally enjoying any goods,
> services, facilities, privileges, advantages, or accommodations, unless
> such criteria can be shown to be necessary for the provision of the
> goods, services, facilities, privileges, advantages, or accommodations
> being offered;

42 U.S.C. § 12182(b)(2)(A)(ii).

In his speech before the House of Representatives during hearings on the

Americans with Disabilities Act, Rep. Steny Hoyer explained the inquiry demanded

as a result of imposing eligibility criteria based on disability:

> This provision ensures important protection for people with
> disabilities, while still accommodating the truly legitimate needs of

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

businesses. For example, entities covered under title III may not use a criterion for services that would deny services to a person with a disability for example, no services to a person with cerebral palsy or that would screen out people with disabilities for example, requiring a driver's license for identification that screens out people with epilepsy when another equally valid form of identification would suffice. At the same time, however, covered entities may impose eligibility criteria that are necessary for the provision of services. For example, a height limitation for certain rides in an amusement park may screen out certain persons with disabilities of short stature, but will be a legitimate criterion because of safety concerns. **The key requirement here is that the criterion must, in fact, be truly necessary for the provision of services. It is expected that courts will carefully scrutinize any assertion by a covered entity that a criterion which discriminates against people with disabilities is necessary. For example, in the safety context, criteria related to such concerns must be based on actual risks and evidence and not on speculation, stereotypes or generalizations about persons with disabilities.**

136 Cong. Rec. E1913-01, E1918, 1990 WL 80290 (May 22, 1990) (Hoyer)(emphasis added). In this case, the District Court abdicated its role to "carefully scrutinize any assertion by a covered entity that a criterion which discriminates against people with disabilities is necessary," but instead deferred to the State of Florida, even when it is demonstrated that there was no sufficient basis for the criterion.

Eligibility criteria must be based on facts, not mere speculation, stereotypes, or generalizations about individuals with disabilities. 28 C.F.R. § 36.301(b). As with a direct threat, an eligibility criterion must be based on an evaluation of actual risks and evidence, relying on current medical or best available objective evidence. 28

Page 16

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

C.F.R. § 36.208(c). The District Court failed to conduct a fact-intensive determination and failed to weigh any evidence about any perceived risks, as to whether disabled persons posed a risk to the safety of others by riding the rides at Volcano Bay. See Rizzo v. Children's World Learning Ctrs., Inc., 84 F.3d 758, 764 (5th Cir. 1996).

Prior to this case, there were three unreported cases in which the district court addressed the issue of eligibility criteria for amusement park rides. Masci v. Six Flags Theme Park, Inc., 2014 WL 7409952 (D. N.J. 2014); Bench v. Six Flags Over Texas, Inc., 2014 WL 12586743 (N.D. Tex 2014); Castelan v. Universal Studios, Inc., 2014 WL 210754. (C.D. Cal. 2014). Two of the cases, Masci and Bench, found that regulations may be evidence of a legitimate safety concern involving a risk of injury. The District Court in this matter adopted the reasoning in the third, Castelan, finding that total reliance on the state regulation is mandatory.

As the Americans with Disabilities Act requires an independent analysis to determine the necessity of a safety requirement that bars participation by individuals who are disabled, and any statute, regulation or rule that removes this duty from a federal court would be in direct conflict with the ADA. As such, when there is a direct conflict, the Supremacy Clause of the U.S. Constitution mandates that the federal law take precedence over state law.

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

**Standard of Review**

The standard of review for an appeal of a District Court's grant of summary judgment is *de novo*, with the Court viewing all facts and drawing all inferences in the light most favorable to the nonmoving party. Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co., 508 F.3d 1337, 1341 (11th Cir. 2007). Summary judgment can only be granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).

**ARGUMENT**

**I. UNDER THE AMERICANS WITH DISABILITIES ACT, A PUBLIC ACCOMMODATION IS NOT PERMITTED TO APPLY ELIGIBILITY CRITERIA TO GUESTS IN A MANNER THAT WOULD SCREEN OUT INDIVIDUALS WITH DISABILITIES, UNLESS THE CRITERIA ARE NECESSARY FOR THE PROVISION OF THE ACCOMMODATIONS PROVIDED.**

Title III of the Americans with Disabilities Act prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). For purposes of the general discrimination provision, discrimination includes "(i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered." 42 U.S.C. § 12182(b)(1)(A)(i), 28 C.F.R. § 36.301 Similarly, Florida courts construe the public accommodations provisions of the Florida Civil Rights Act in conformity with the Americans with Disabilities Act. Ring v. Boca Ciega Yacht Club Inc., 4 F.4th 1149, 1155 (11th Cir. 2021).

To establish a claim, a plaintiff must allege that he has a disability as defined by 42 U.S.C. § 12102, and that defendants' imposition or application of unnecessary eligibility criteria has screened them out or tended to screen them out from accessing a privilege or advantage of defendants' public accommodation. Rendon v. Valleycrest Productions, Ltd., 294 F.3d 1279, 1283 (11th Cir. 2002); see also Gil v. Winn-Dixie Stores, Inc., 993 F.3d 1266, 1278 (11th Cir. 2021).

Title III regulations provide that "[a] public accommodation may impose legitimate safety requirements that are necessary for safe operation." 28 C.F.R. 36.301(b). The regulations explain that these requirements "must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities." Id. The Department of Justice has explained that this regulation

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

permits public accommodations to "impose neutral rules and criteria that screen out,

or tend to screen out, individuals with disabilities, if the criteria are necessary for the

safe operation of the public accommodation." 56 Fed.Reg. 35, 544-01 (July 26,

1991); see also 28 C.F.R. 36.301(a).

Eligibility criteria can be considered "necessary" when they are imposed to

ensure safety and are necessary. See Bauer v. Muscular Dystrophy Ass'n, 427 F.3d

1326, 1331-32 (10th Cir. 2005) (affirming the district court's finding that a summer

camp's requirement that volunteers be able to lift and care for a camper was

necessary for the safe operation of the camp); United States v. Asare, 2018 WL

2465378 (S.D.N.Y. 2018) (cosmetic medical practice's eligibility criteria, which

screened out individuals with HIV, was not necessary); *accord* Doe v. Deer

Mountain Day Camp, Inc., 682 F. Supp. 2d 324 (S.D.N.Y. 2010)(No basis in actual

risk to bar child who was HIV+ from basketball camp); Theriault v. Flynn, 162 F.3d

46, 50 (1st Cir. 1998) (holding that it was permissible for a licensing officer to

require an individual with an apparent lack of hand control to take a road test prior

to renewing his license to operate a vehicle equipped with hand controls because

"the safety of the public at large is implicated"), or to achieve the essential purpose

of the services offered; Leiken v. Squaw Valley Ski Corp., CIV. S-93-1622 LKK,

1994 WL 494298, at *9 (E.D. Cal. June 28, 1994)(ski resort's prohibition of

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

wheelchairs on cable car ski lifts that denied access to the ski resort's facilities was

based on unsupported subjective judgment of the operator of the resort); Anderson

v. Little League Baseball, Inc., 794 F. Supp. 342 (D. Ariz. 1992) (speculation that a

coach who used a wheelchair would be a safety threat in that a child may collide

with a wheelchair found unsupported and speculative)

All courts that have addressed the affirmative defense of legitimate safety

requirements have found that there must be evidence that the rule is based on actual

risks and not speculation or stereotypes.  See Matheis v. CSL Plasma, Inc., 936 F.3d

171, 179 (3d Cir. 2019) (finding that a rule barring all dogs, including service

animals, is not a legitimate safety criterion at a blood plasma center); Schutza v.

CarMax Auto Superstores California, LLC, 2018 WL 4562771, at *6 (S.D. Cal.

2018)(finding rule that excludes all paraplegics from test driving cars with

temporary hand controls found unsubstantiated by risk and unnecessary); United

States v. Asare, 2018 WL 2465378, at *5 (S.D.N.Y. 2018) (finding criteria of

cosmetic surgery center that excluded those who are HIV+ as  unnecessary to ensure

safety); Blind Indus. & Services of Maryland v. Route 40 Paintball Park, 2012 WL

6087489, at *6 (D. Md. 2012)(safety rule that blind people cannot play paintball

because they could not perceive what they were shooting as question of fact);  Larsen

v. Carnival Corp., Inc., 242 F. Supp. 2d 1333, 1345-6 (S.D. Fla. 2003)(finding that

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

cruise line imposed neutral eligibility requirements when requiring a man to disembark when sailing cannot not impose a critical risk to any individual's health.)

The guidance to the 1991 regulations provides examples of criteria that would be a violation:

> It would violate this section to establish exclusive or segregative eligibility criteria that would bar, for example, all persons who are deaf from playing on a golf course or all individuals with cerebral palsy from attending a movie theater, or limit the seating of individuals with Down's syndrome to only particular areas of a restaurant.

28 C.F.R. § Pt. 36, App. C, p.960 (7-1-21). Instead, any eligibility requirement should be neutral and focused on the specific issue that necessitated the safety requirement that created a substantial risk.

> [A]ny eligibility or safety standard established by a public accommodation must be based on actual risk, not on speculation or stereotypes; it must be applied to all clients or customers of the place of public accommodation; and inquiries must be limited to matters necessary to the application of the standard.

28 C.F.R. § Pt. 36, App. C, p. 955 (7-1-21). Two examples in the guidance to the regulations include height requirements for certain amusement park rides and a necessary level of swimming proficiency for all participants in a recreational rafting expedition. Id at p. 960.[1]

---

[1] *See generally*, William L. Moorer, Who Decides Who Rides: Examining Amusement Ride Access Policies and Title III, 88 Miss. L.J. 411, 425 (2019)(" Ride manufacturers, adhering to ASTM standards, must establish and provide ride owners with "any [] passenger limitations such as, but not limited to, height passenger

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

For example, in <u>Blind Indus. & Services of Maryland</u>, a paintball park did not

permit a group of blind persons from engaging in a paintball fight. The court

recognized that "perceived" was the operative word in the rule that requires "players

to perceive what they are shooting," and that being blind does not necessary equate

to perceiving as the blind students have learned alternate methods to perceive. <u>Blind</u>

<u>Indus. & Services of Maryland</u>, 2012 WL at *6. In <u>Matheis v. CSL Plasma, Inc</u>., 936

F.3d 171, 179 (3d Cir. 2019), the Appellee maintained that the federal regulations

for blood transfusions provided them the total discretion to determine the donor's

eligibility to donate blood.  <u>Matheis</u>, 936 F.3d at 180.  The Court disagreed and found

that the accommodation must still proceed with the safety analysis.

> CSL contends that it has complete discretion to determine what
> treatments, including use of service animals, show a donor may be
> harmed by donating. This overreads the blood transfusion regulation. It
> does not give plasma donation centers *carte blanche* to ignore U.S. law,
> which not only mandates that service animals be allowed, 28 C.F.R. §
> 36.302(c), but also specifies when public accommodations may adopt

---

placement, or any other appropriate restrictions." ASTM standards provide
manufacturers with testing procedures to determine any passenger limitations. The
testing procedures ensure manufacturers accurately calculate the actual dynamic
forces that patrons experience on a ride. Using these procedures, manufacturers
collect biometric data and analyze the actual risk of a ride's dynamic forces on
potential riders. Manufacturers, in turn, use this information to create the rider
restrictions that are provided to the ride owners." Accordingly, to develop height
limitations, manufactures must apply testing procedures and determine the actual
dynamic forces that riders experience to determine the safety of using the ride.  In
this matter, and distinguished from a roller coaster, there are no standards for
manufactures, there were no testing procedures undertaken, there were no dynamic
forces measured, and there was no biometric data collected.

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

> rules that exclude disabled individuals in the name of safety, 28 C.F.R.
> 36.301. Applied to our case, CSL may consider a service animal among
> the list of "[c]ertain medical treatments" it can assess for eligible
> donating of plasma so long as it can show that the safety policy it adopts
> is based on "actual risk and not mere speculation, stereotypes, or
> generalizations about individuals with disabilities."

Matheis*.*, 936 F.3d 171, 180 (3d Cir. 2019). Similarly, Florida regulation does not

give *carte blanche* to ignore U.S. law, and must even determine whether the

regulations are based on actual risks.

The analysis for direct threat has been found not to be relevant for an inquiry

related to an eligibility safety requirement. Matheis, 936 F.3d at 180. The direct

threat analysis requires an individualized assessment of a particular person with a

disability to demonstrate a direct threat to the health and safety of others. See 28

C.F.R. § 36.208. However, similar to determining the validity of an eligibility

requirement involving safety, in determining the existence of a direct threat, a

judgment cannot be based on generalizations or stereotypes about the effects of a

particular disability, but must result from "an individualized assessment, based on

reasonable judgment that relies on current medical evidence or on the best available

objective evidence." 28 C.F.R. § 36.208(c); Chevron U.S.A., Inc. v. Echazabal, 536

U.S. 73, 86 (2002) (*quoting* 29 CFR § 1630.2(r) (2001)("The direct threat defense

must be 'based on a reasonable medical judgment that relies on the most current

medical knowledge and/or the best available objective evidence,' and upon an

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

expressly 'individualized assessment of the individual's present ability to safely perform the essential functions of the job,' reached after considering, among other things, the imminence of the risk and the severity of the harm portended.") In Echazabal, the Court was concerned about the ADA's goals of rejecting the Congressional policy against paternalism that Congress had in its sights when it passed and focusing on both the documented risks involved and the imminence of the risk. Id. at 85-86.

There are three unreported cases, all in 2014, that involve the application of the ADA to amusement park rides, and each of these cases involved the effect of state regulations to the application of the ADA. Two of these cases found that regulations may be evidence of a justifiable safety standard, while one found that complete deference must be provided to state regulations. The District Court in this case followed the minority position - Castelan v. Universal Studios, Inc., 2014 WL 210754. (C.D. Cal. 2014). In Castellan, the court found that California state law requires that the manufacturer's safety criteria for a roller coaster be followed, and the Court cannot second-guess the manufacturer's safety requirements. Id at *7. Since the manufacturer has directed that a rider must have at least one functioning arm and hand, and at least one leg and foot, the public accommodation is not responsible to challenge the manufacturer's operating manual, and ensure these

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

requirements are in fact necessary for the safe operation of the ride. Id. According

to the Castelan court, the plaintiff had the obligation to initiate an action against the

manufacturer if he believed the restrictions violate the ADA. Id.

In adopting the reasoning of Castelan, the District Court in this case opined

that there would not be a cause of action against the manufacturer who is not a public

accommodation as defined under the statute, and a court cannot "amend the ADA

and fabricate liability where none seems to exist" (Doc 66 – Pg 9).

In Bench v. Six Flags Over Texas, Inc., 2014 WL 12586743 (N.D. Tex 2014),

the District Court found that the public accommodation had an independent

requirement to determine whether the eligibility rule satisfied 28 C.F.R. § 36.301

and state law could not be an absolute defense when it would conflict with the

requirements of federal law pursuant to the Supremacy Clause of the U.S.

Constitution. U.S. Const. Art. VI, cl. 2 Id. at *7. The amusement park had the

obligation to establish their eligibility criteria on the merits. Id. The Court found the

evidence of generalized statements by the ride operator did not meet the standards

required under 36.301:

> That evidence could be summarized in two sentences: "Trust us on this
> one. Somebody said we needed to do it." None of it shows what "actual
> risk" the criteria was based on. Nor does it show how the amusement
> park made an "individualized assessment" at all. At best, it shows they
> bluntly compared a wide class of rides and imposed uniform
> requirements. That broad approach is commendable in terms of cost.

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

> But it also leaves Bench without an answer as to why his disability
> prevents him from safely riding roller coasters, and it does not satisfy
> the ADA's requirements.

Id at *9. Similar to <u>Bench</u>, the District Court in <u>Masci v. Six Flags Theme Park, Inc.</u>,

2014 WL 7409952 (D. N.J. 2014) found that the amusement park can rely on the

ride manufacturer's expertise, as they were in the best position to make the ride safe

for all guests. This is not an absolute defense, but *evidence of* a legitimate safety

requirement under the ADA. <u>Id</u>. at *10. But, in the absence of specific

manufacturer's guidelines, the rules did not meet the requirement of §36.301.

> Defendants have failed to provide any evidence supporting why these
> ridership requirements were established. These standards created by
> Six Flags—that apply to apparently every ride except an extremely
> small minority—have not been established or shown to be necessary
> for the safe operation of each ride. It certainly fails to establish what
> "actual risk" the safety requirements are based on. See 28 C.F.R. §
> 36.301. Indeed, such a blanket approach to ridership requirements of
> rides with varying levels of risk (from "mild" to "high thrill") certainly
> insinuates the imposition of such requirements was based on "mere
> speculation, stereotypes, or generalizations about individuals with
> disabilities" rather than actual risk. *Id.*

Id at *11. With regulatory requirements similar to that in this matter, the District

Court in <u>Bench</u> found the responsibility to ensure that the manufacturer complies

with the ADA rested with the public accommodation.

> And besides, if the amusement park does not take a hard look at the
> criteria, who will? States are passing the buck to ASTM and ASTM is
> passing the buck to manufacturers. The <u>Castelan</u> court suggested they,
> the manufacturers, are the ones who should be held accountable, see

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

Castelan, 2014 WL 210754, at *7 ("If Plaintiffs believe the restrictions are overprotective, they are free to initiate an action against the manufacturer."), but this Court is not so sure that is possible. The prohibition on discrimination applies to "any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

Bench, 2014 WL 12586743, at *8.

In this matter, Volcano Bay had the burden to establish that the qualification criterion which discriminates against people with disabilities is necessary; as such, the criteria related to such concerns must be based on actual risks and evidence and not on speculation, stereotypes, or generalizations about persons with disabilities. 136 Cong. Rec. E1913-01, E1918 (Hoyer). To the extent that the public accommodation relies on any public entity (State of Florida), private entity (ProSlide), on industry group (ASTM), that establishes criterion, it does not excuse the public accommodation from its burden to establish that such criterion is based on actual risks and evidence. There is no justification to permit a public accommodation to perpetuate discrimination against any protected class.

## II.    IN ALL CIRCUMSTANCES, FEDERALISM AND THE SUPREMACY CLAUSE MANDATE THAT CONFLICTING STATE LAWS AND ORDINANCES MUST CEDE TO THE REQUIREMENTS OF THE AMERICANS WITH DISABILITIES ACT.

The Supremacy Clause of the Constitution "creates a rule of decision: Courts 'shall' regard 'the Constitution,' and all laws 'made in Pursuance thereof,' as 'the

supreme Law of the Land,'" and therefore courts "must not give effect to state laws that conflict with federal laws." Armstrong v. Exceptional Child Center, Inc., 575 U.S. 320, 324, 135 S.Ct. 1378, 191 L.Ed.2d 471 (2015) (Scalia, J.) (*quoting* U.S. Const. Art. VI, cl. 2). Any state law that conflicts with federal law is preempted by the federal law and is without effect pursuant the Supremacy Clause of the Constitution. Lewis v. Brunswick Corp., 107 F.3d 1494, 1500 (11th Cir.1997) (*citing* Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992)). State laws that "interfere with, or are contrary to the laws of congress, made in pursuance of the constitution" are invalid. Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 604 (1991) (citing Gibbons v. Ogden, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824)); see also U.S. Const. Art. VI, cl. 2.

In evaluating whether federal law takes precedence over state law, the court begins with the presumption that "the historic police powers of the States were not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." Jones v. Rath Packing Co., 430 U.S. 519, 523, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977) (*quoting* Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, (1947) (quotations omitted)). Such conflicts exist not only where "it is impossible . . . to comply with both state and federal law," but also "where under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

to the accomplishment and execution of the full purposes and objectives of
Congress." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 372-3 (2000)
(internal citation and quotation marks omitted). The Supreme Court has "held
repeatedly that state laws can be pre-empted by federal regulations as well as by
federal statutes," Hillsborough County v. Automated Med. Labs, Inc., 471 U.S. 707,
713 (1985), and that "[f]ederal regulations have no less pre-emptive effect than
federal statutes," Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153
(1982).

        The courts of appeals have consistently and repeatedly applied such principles
in holding that federal disability rights laws, including the ADA, preempt state
statutes to the extent that state laws conflict with federal mandates. See, e.g., Astralis
Condo. Ass'n v. HUD, 620 F.3d 62, 69-70 (1st Cir. 2010) (defendant could not
permissibly rely on Puerto Rico law to refuse to provide an accommodation required
under the Fair Housing Act for a person with a disability); Mary Jo C. v. New York
State & Local Ret. Sys., 707 F.3d 144 (2d Cir. 2013) ("Congress clearly meant Title
II to sweep broadly. If all state laws were insulated from Title II's reasonable
modification requirement solely because they were state laws, 'state law [would
serve as] an obstacle to the accomplishment and execution of the full purposes and
objectives of Congress' in enacting Title II."); Nat'l Fed'n of the Blind v. Lamone,

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

813 F.3d 494, 509 (4th Cir. 2016)( If "all state laws were insulated from Title II's

reasonable modification requirement solely because they were state laws ... the ADA

would be powerless to work any reasonable modification in any requirement

imposed by state law, no matter how trivial the requirement and no matter how

minimal the costs of doing so."); Jones v. City of Monroe, MI, 341 F.3d 474, 487

(6th Cir.2003), abrogated on other grounds by Anderson v. City of Blue Ash, 798

F.3d 338 (6th Cir.2015)("Requiring public entities to make changes to rules,

policies, practices, or services is exactly what the ADA does."); Crowder v.

Kitagawa, 81 F.3d 1480 (9th Cir. 1996) (concluding that Hawaii's animal quarantine

law, as applied to guide dogs, denied plaintiffs access to state services, programs,

and activities in violation of the ADA); Barber v. Colorado Dep't of Revenue, 562

F.3d 1222, 1233 (10th Cir. 2009) (emphasizing that proposed accommodation under

federal disability law is not unreasonable simply because it might require defendants

to violate state law). As the Tenth Circuit has emphasized, "[r]eliance on state

statutes to excuse non-compliance with federal law is simply unacceptable under the

Supremacy Clause." Barber, 562 F.3d at 1233. Simply put, a defendant "is duty

bound not to enforce a [state] statutory provision if doing so would either cause or

perpetrate unlawful discrimination" under federal law. Astralis, 620 F.3d at 69. To

the extent Florida law or regulation impedes any public accommodation's ability to

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

comply with its ADA obligations, state law must "give way." <u>North Carolina State</u>

<u>Bd. of Educ. v. Swann</u>, 402 U.S. 43, 45 (1971).

The Court's analysis in this matter is identical to the 9th Circuit in <u>Crowder</u>

where the district court determined that "[t]he legislature has already thoroughly

considered [the plaintiffs'] proposed alternatives and has rejected them. As noted

earlier, it is the province of the legislature, and not this court, to assess the efficacy

of public health measures against the risks they are designed to reduce, particularly

when the questions are debatable, and experts disagree as to the best solution to the

problem." <u>Crowder</u>, 81 F.3d at 1485. The Crowder court reversed specifically on

this point, as follows:

> The court's obligation under the ADA and accompanying
> regulations is to ensure that the decision reached by the state authority
> is appropriate under the law and in light of proposed alternatives.
> Otherwise, any state could adopt requirements imposing unreasonable
> obstacles to the disabled, and when haled into court could evade the
> antidiscrimination mandate of the ADA merely by explaining that the
> state authority considered possible modifications and rejected them.

> We are mindful of the general principle that courts will not
> second-guess the public health and safety decisions of state legislatures
> acting within their traditional police powers. See <u>Queenside Hills</u>
> <u>Realty Co. v. Saxl</u>, 328 U.S. 80, 82–83, 66 S.Ct. 850, 851–52, 90 L.Ed.
> 1096 (1946). However, when Congress has passed antidiscrimination
> laws such as the ADA which require reasonable modifications to public
> health and safety policies, it is incumbent upon the courts to insure that
> the mandate of federal law is achieved.

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

Crowder, 81 F.3d at 1485. In this matter, the state did not even thoroughly considered the issue, it just meekly deferred to industry standards which referred to the manufacturer's requirements. The public interest in enforcing the ADA 'trumps' the needs of the operators of amusement park rides to influence state regulators to defer to their needs or desires. See Sak v. City of Aurelia, Iowa, 832 F. Supp. 2d 1026, 1047 (N.D. Iowa 2011) (holding that "the national public interest in enforcement of the ADA 'trumps' the more local public interest in public health and safety reflected in the Ordinance prohibit pit bulls")

"The conflict between federal and state law is unmistakable here […] And the conflict is over a matter of central importance to the federal scheme." Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 173 (1963). The federal scheme here is the protection of disabled individuals from deprivations stemming from arbitrary eligibility requirements based solely on mere speculation and generalizations about persons with disabilities. See 42 U.S.C. § 12182. Campbell asserts that federal law under the ADA must be complied with in order to justify eligibility criteria based on real risks and not stereotypes, that tend to screen out individuals with disabilities. See 42 U.S.C. § 12182(a). Volcano Bay asserts Florida state law under its Department of Agriculture's regulations ultimately empowers manufacturers to dictate the justifiability of eligibility criteria. See 5J-18.0011(1).

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

"[I]t is incumbent upon the courts to ensure that the mandate of federal law is achieved." <u>Crowder</u>, 81 F.3d at 1485.

**Conclusion**

For the reasons stated herein, this Honorable Court should reverse the District Court's Order Denying Campbell's Motion for Summary Judgment and Granting Volcano Bay's Motion for Summary Judgment entered on February 7, 2022 (Doc. 66) and remand for further proceedings.

Dated this June 2, 2022.

Respectfully submitted,

By: _____
Matthew W. Dietz, Esq.
Fla. Bar No.: 6084905
DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Telephone (305) 669-2822
mdietz@justdigit.org
aa@justdigit.org

*Counsel for Appellant*

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

**Certificate of Compliance**

I, Matthew W. Dietz, attorney of record for Appellant Dylan Campbell, do hereby certify that the foregoing brief complies with the type-volume limitations as set forth in Federal Rule of Appellate Procedure 32(a)(7)(b). The total number of words in the foregoing brief is 8,187 words.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the typestyle requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure. This brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

By: _____
Matthew W. Dietz, Esq.
Fla. Bar No.: 0084905
DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Telephone (305) 669-2822
mdietz@justdigit.org
aa@justdigit.org

*Counsel for Appellant*

Campbell v. Universal
LT No. 20-cv-00846-PGB-LRH
Case No. 22-10646-CC

## Certificate of Service

I hereby certify that on this June 2, 2022, an electronic copy of the foregoing document was filed with the Clerk of Court for the United States Court of Appeal for the Eleventh Circuit using the CM/ECF system which will send notice of electronic filing to all parties and Counsel of record; original and six (6) copies of were sent via Federal Express to the Clerk of Court; a true and correct copy of the Brief was served via CM/ECF and via electronic mail to: Christina Y. Taylor, Esq., ctaylor@lathamluna.com; Michael J. Beaudine beaudine@lathamluna.com; and David Raizman david.raizman@ogletreedeakins.com, Counsel for Appellee.

By: _____
Matthew W. Dietz, Esq.
Fla. Bar No.: 0084905
DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Telephone (305) 669-2822
mdietz@justdigit.org
aa@justdigit.org

*Counsel for Appellant*